Good morning, Your Honors. I'm Dan Sherman, representing the Plaintiff Appellant Melissa Missy Kennedy. I have reserved five minutes for rebuttal. Perhaps it is fitting, in a case where the employer is Parkview Baptist School, Inc., to quote from the biblical book of Amos, where it states, "'But let justice roll like a river, righteousness like a never-ending stream.'" Mr. Sherman, as I understand it, one of your complaints here is that you were not allowed appropriate discovery. Is that right? That's correct. Our motion to compel was denied. As I understand it, because I haven't read the whole record, but just as I understand it from the briefs, though, I don't find anywhere in here that you adequately explained to the district court what the need was for the discovery that you say you were denied. I disagree with you respectfully, Your Honor. The charts that we attach to show specifically go into great detail what was said specifically early on in this case, Your Honor, about the status report and their side of the story. We show this is what they're saying and this is what we need, including the personnel files, to show comparative evidence. In detail about what they're saying and what we need, and all for what? To support our claims, Your Honor, and to undermine the credibility of their legitimate non-discriminatory, non-retaliatory reasons. Was this completely a fishing expedition in discovery, or did you have some way of targeting your discovery because you knew of some things that were going on or there are some disparities there at the workplace? It absolutely was not a fishing expedition. I know that that's, you know, popular parlance on the side of a defense bar, I get it in every case, but that's not what we were doing. And those charts show specifically what we needed. For example, the record 268 through 99, where we're specifically asking for the Parkview interview of witnesses regarding the grievances that Melissa Missy Kennedy submitted three weeks before her dismissal, how Kennedy was not a team player, that's one of their legitimate non-discriminatory, non-retaliatory reasons, what concerns were expressed by all of these other teachers or parents, all hearsay evidence that the court below accepted at face value. I understand that one of the requests that you made was for every personnel file and document related to the employment of every faculty and staff member since 2007, is that right? Remember, we were willing to just go with grade books. It's in the record, totally ignored by the district court saying that I wasn't willing to compromise. That's exactly opposite of what it was. I was willing to compromise. We were certainly looking for comparative evidence all relevant to the case. I was willing to compromise. It's in the record, totally ignored by the court below. We didn't expect to get everything, but we certainly were asking for a lot because it takes a lot of evidence to win these cases. But a fishing expedition, no, your honors, please don't accept what the other side says about what plaintiffs won in these cases. That is not the case. Now... What's your best evidence that age or disability were reasons either but for a motivating factor for firing Ms. Kennedy? Perhaps the best evidence is the admission on the part of one of the Parkview board members, Bridget Denicola, that it was a factor. Well, excuse me, but the board members didn't make the decision, right? It was Headmaster Ezell. Well, that's what the defendants say. They also want to disavow anything that Jill Coward had to do with this. This is the one making the age-related statements. Please, let's not, you know, accept that anything but the reality goes on in the workplace. It's as if faculties and administrators don't get together and talk about things that... Well, we've all had children in these kinds of schools, and we have a general sense of what goes on if a teacher is terminated or quits, and there's a lot of rumors and so on. And it seems to me that the best evidence of what was going on here is Ms. Kennedy's She complains about being bullied. She complains about being mobbed. She complains about everything except age and health. And she invokes them, but there's no facts in her grievance that say anything, you know. That's absolutely not the case, Your Honors. Please look at Defense Exhibit 5, one of their exhibits, and there and there it's talking about the age discrimination and the disability discrimination. For example, the asthma, you know, there's the evidence regarding that. In fact, the defendant had a leaf slip where Missy is saying, you know, I can't come to work. I've got this inflammation problem. I have asthma. So they were on notice about this, and then, of course, it's in her grievance in the Defense Exhibit 5, Your Honor. Then again, sure they knew she had asthma. A lot of people have asthma. But she only took one-third of her allotted leave days off for at least two years before she was terminated. Then she was specifically offered health-related leave toward the end of 2012. She said, no, I don't want that. I'm healthy. Your Honors, that leave was with a termination. You know, that was to get a resignation. That's what that was about. And at that point, Missy said, no, I can do my job with a reasonable accommodation. That's what happened here. That was three weeks before, in fact, that particular offer was two days before the termination, Your Honor. Your idea of a reasonable accommodation was, I will never speak, I will never see the face of the headmaster speak to the headmaster, assistant headmaster again? Was that her idea of an accommodation? Her accommodation was to be able to continue doing her job, not having an air-conditioning problem because she's got this inflammation problem. When did that happen? There's at least the one incident where she had to be removed from the bus. This was two days before the termination, when they were on a field trip. But she was constantly complaining about these problems. There is the leave slip. If you look at the affidavits that are in evidence, and of course, they're saying that she wasn't a good teacher, you know, part of the legitimate non-discriminatory . . . I'm not saying that she was not a good teacher. I'm sorry, Your Honor? I do not see that as a disputed point, nor did the magistrate judge in his opinion. Oh, Your Honor. They talk about . . . That's the only place they get along with, and that I don't, you know, again, I say we've all had kids in schools and things happen like that, but they did not say she was not a competent teacher. Your Honor, how can you be a competent teacher if you look at the legitimate non-discriminatory reasons? You know, not collaborating with co-workers, participating in an unsanctioned library meeting, you know, student and parent complaints, on and on, you know . . . Isn't it insubordinate to tell the headmaster, yes, I attended that meeting in the library last summer, but I refused to talk to anybody about it? You look . . . No, Your Honor, it isn't. And this is why. There's the testimony in the record from the interim headmaster, Don Green, about how all the teachers were so afraid to do anything. They had a meeting off the site because they were afraid of tape recordings, cameras. That has nothing to do with age discrimination or disability discrimination. It does have to do with the perception about whether this person is a loyal employee or not. Your Honor, they had that meeting after the grievance was submitted. And why you believe . . . . . . parent meeting that occurred in the summer of 2011, where people were airing, some people were airing their grievances, and then Ms. Kennedy refused to speak to Ms. Coward, I believe, three times, said, I will not talk about that. Your Honor, I'm sorry, you're getting the facts mixed up. That meeting had nothing to do with any parent or student complaints. In the record evidence, it shows Ms. Kennedy never knew about any of this. There's a lot of questions when Mr. Foster took her deposition about these complaints and one student whose initials are BB, and what's the testimony? I never heard about any of this. This is all what they drummed up to try and get out of a lawsuit. None of that stuff was brought to Missy Kennedy. And look at the evidence about all the good work she did, all the problems, protests, placards on the day that they fired her. They tried to say that her performance was not good. You look at all of these legitimate, non-discriminatory reasons, you know, not being cooperative, being insubordinate, like I say in the brief, you cannot square the fact that they're saying that she's insubordinate and unprofessional, and the district court says in its decision the fact that she was a competent teacher. You can't square that. What that shows is that this defendant is trying to throw mud on an employee to try and justify what they did post-lawsuit, Judge, not before. Let me ask you about a couple of things, allusions in the record that I didn't see explained. One was something about students bumping and grinding, which seems odd for second or third graders, and another one is the playground incident, and people keep referring, what are those things? It certainly was unusual, Your Honor. And this undermines the credibility of any Parkview effort to say that they had any kind of legitimate investigation about Missy Kennedy or anything. It's one incident, well, it involves two separate incidents that happened in the same place involving students that were, according to the four witnesses who were in a construction company right across the street from the school, and they witnessed this, you know, and they describe it as extremely upsetting, that their grandchildren's age, they were speechless at the time. You'll find this at Record 208. It gives you an insight into the Parkview attitude toward seeking truth, justice, and the American way. They don't. They care about profit. That's what this is about. You've got the Don Green testimony about what really happens when they have an investigation, and he said he didn't even know about this, and neither did the Parkview Baptist board member, Danicola. Did they have any kind of investigation of this? They did not. And look at... Did Miss Kennedy have anything to do with these incidents? Yes. She reported it. It's part of her grievance letter. You know, because they did nothing about it. And look what Mr. Walt and the owner of the company, he says, this is at Record 2010, that Parkview kept asking them if they had addressed the situation. In other words, they want them to sprinkle holy water on this like they just took care of it. And they wouldn't answer yes. And because it had not happened, and Parkview never told these neighbors, this company right across the street from the school about what's going on, and they witnessed this not once but twice. It happened a second time a few days later after it was reported. And they still didn't have a teacher or some kind of employee monitoring this area? Your Honors, this shows the attitude of this employer towards getting at what's the truth. They didn't. And that's the relevance of this incident that happened in the playground. Parkview Baptist didn't care about what happened. That's what happened. You know, and you mentioned the library meeting. It happened off-site because of all of the fear on the part of these teachers. We've got the testimony of Lee Ann, Ms. Sibolic, and two other teachers. They're all in the tabs where we selected certain pages from it. But you look at the entire record of what was going on here. The older teachers being replaced by the younger. There were... I was going to say, in their brief, I believe that there's about, or maybe it's the magistrate judge, that there are about almost equal number of teachers over and under the age of 40. It's refuted by our own evidence. They didn't even pick the years that Missy Kennedy was working there. You know, but everything that we said, that was considered self-serving and conclusory. And everything that Parkview said, well, that's legitimate, non-discriminatory, non-retaliatory reasons. That's what happened here, Your Honors. Thank you. Mr. Murphy. Foster, excuse me. Thank you, Your Honor. May it please the Court. Murphy Foster on behalf of Parkview Baptist School. This circuit said it best in the Dorset case. In public and private schools and universities across the nation, inter-faculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, a host of other relatively trivial matters. A federal court is simply not the appropriate forum in which to seek redress for such harms. In this case, Your Honors, we've never maintained that Miss Kennedy was not a competent teacher. It's not about that. It has to do with a number of other things. You're not saying that under the law, a private school can't, under the appropriate circumstances, be held liable for age or disability discrimination? Absolutely. A private school or a public school may be held liable for violations of the ADA or the ADEA. I'm not saying that they can't at all, Your Honor. I'm saying it didn't happen here. There's a lot of talk, and you heard it from— My point is, I mean, you, just because it may be a faculty squabble or there may be lots of other things going on, human nature being what it is on a school faculty, that doesn't insulate—I hope you're not saying or suggesting that that somehow insulates an employer from the requirements of whether it's Title VII or these other specialized discrimination statutes. Not at all, Your Honor. The purpose for the side is, unfortunately, as referenced by Judge Jones early in Mr. Sherman's argument, squabbles like this happen at schools, and there's a lot of backfighting and bickering that happen, and one side allegedly crosses another side. The facts of this case, Your Honor, are undisputed, that are dispositive to its ultimate disposition. Correctly asked was the ratio of teachers insofar as the age issue. In 2012, 61 teachers at that school were over 40, 60 were under 40. In 2013, 64 over 40, 61 under 40. In 2014, 63 over 40 and 63 under 40. He references the teachers that left the school. In 2013, eight teachers left, though there's no specific reasons. Well, it was after she was gone. That's right. But nevertheless, in 2012—actually, her last year was 2012—of the eight teachers that were no longer there the following year, six of those were under 40. With regard to the issue of the library incident. The library incident makes no reference, no witness interviewed, no deposition, no affidavit suggests that that involved complaints of sex or race, discrimination of any sort or kind. It was in 2011, right? It was in 2011, that's correct. In 2011 and again in 2012, Ms. Cowart, because of the behavior, not the competency, but because of the behavior of the appellant, put her on notice that she would not likely be renewed for the 2012-13 school year. In fact, when she was released, she was given full pay and paid through the end of the year and simply not renewed the following year. Also critical, your honors, is the fact that the evidence showed and the court found below that she was not replaced. Ms. Kennedy was not replaced during the following school year. With regard to the kindergarten incident that was—the playground incident. This involved two kindergarten children. It was reported third-hand to Ms. Kennedy. She felt it important to get involved in it. It was investigated thoroughly by the school. It was immediately and swiftly remedied, yet Ms. Kennedy felt the need to continue to be involved in the matter, despite her third-hand involvement or knowledge of it, by going to the press and giving the names of these two kindergarteners to the press. Did an interview in the press on television about it. That's a pretty good indication of what we were dealing with as a school. This has nothing to do with sex—I'm sorry—with handicapped discrimination or with age discrimination. With regard to your question earlier on the motion to compel in the discovery. Two problems there. It was never raised at the lower court on the motion for summary judgment. Appropriately, it would be inappropriate for this court to consider it without due respect. But second of all, there were other remedies available. A Rule 56D motion would be appropriate to defer the ruling on the summary judgment if, in fact, the plaintiff felt that he needed more discovery. There was no 56D motion? There was not. There were 77 requests for production of documents, which did ask for every file of every teacher for the last five years. You produced like 700-plus pages, didn't you? We produced a lot. We produced a lot, yes, Your Honor. There was never any follow-up motion of any sort or kind to suggest a limiting of what the judge said was inappropriate. I'll answer any other questions that you might have. Well, I saw part of Ms. Kennedy's grievance in these record excerpts, but evidently it was just part of it. Oh, tab 11. So that's where she talked about the playground incident or what? This is only page 3 of 7, so we don't have the other six pages on the grievance. What was the sequence of the grievance and the termination? The grievance, to take it into context, there was a meeting in March of 2012 between Ms. Coward and Ms. Kennedy, wherein Ms. Kennedy was told that she was not going to be renewed for the following year. It was within a couple of weeks of that meeting that she filed her grievance that focused on poor management of the school, poor behavior by the superintendent, the headmaster. She was still bringing up the issue of the playground incident with the two kindergarten children. She was complaining that some teachers got better assignments than she did. She complained that her lesson plans that she had developed were superior to what the school was using and that the school should be using those. The school thoroughly investigated and took statements from everybody named in that grievance. Every person that was named in that grievance was involved, was brought into the investigation to get their side of the story. With all due respect, Your Honors, this is a case where there was a teacher who felt that she had to be involved in everything and in everybody's life. It was bickering. It was meddling. It was not discrimination. Any further questions, I'd be happy to address. Okay. Thank you. Thank you. Your Honor, you do have the entire grievance letter in the record. Of course, it's only one page I selected for the tab because I'm limited to the 40 pages. That was just a judgment call. Maybe I should have put all seven pages in. I did not. I apologize for that. Perhaps I should have. But it is in the record. You can look at the whole grievance, which talks at length about the disability and age discrimination in addition to the playground incident. Now, the investigation that counsel is so ready to champion, I have quoted what your neighbor next door in the Eastern District, Judge Englehart, has to say about self-investigations. They're worthless. So anything they're saying about the playground incident, it tells you just what they did with regard to anything regarding Missy Kennedy. And as Mr. Walton— If you hadn't done that, you'd be standing here complaining that there was no internal investigation to try to get to the truth of the matter, wouldn't you, as an advocate? Perhaps. But if you're going to just have a rubber stamp kind of investigation and that's it, then I'm not saying internal investigations are a total waste of time, but if you want to really get at the truth, you've got to have an independent look at it. And perhaps they could have done something to convince Mr. Walton and the people working at the construction company that they had actually cared enough to look into it, but they didn't. They kept insisting at this meeting that, well, did we do it? Because that's what they wanted, just to have somebody say it was okay. And that indicates to you what's really going on here. Because, I mean, this man doesn't have an ax to grind in this case. He's just there, a concerned grandfather who's seeing something happen to two little children, and he's, you know, brought it to attention, and then it happens a few days later. It certainly— I'm not sure I'm following your argument here. What does this have to do with discrimination in a disability or age? Right. Because they're claiming, you know, that they properly investigated all of these so-called complaints against Missy Kennedy, you know, because they're trying to say that they have legitimate non-discriminatory, non-retaliatory reasons because of all of the stuff saying she's insubordinate and unprofessional. And Missy Kennedy's saying, that's not true, that's a lie. I never heard about any of this stuff until Mr. Foster took her deposition. Did your client actually reveal the kids' names to the TV? Absolutely not, Your Honor. That is a lie. She did not. She didn't know the names. And what's telling about this whole thing involving, you know, going on the website or whatever, is that, you know, when they made a big deal about all of this early on in the case, and we pointed out, hey, Parkview Baptist School's own website puts these names and everything out there. We totally undermined the credibility of that claim, again, trying to throw mud on Missy Kennedy, trying to get out of the lawsuit. So then, once we showed that, they dropped that, that avenue, because it was not true. Missy Kennedy didn't go with names. How do you determine that's not true from this record? I'm sorry, Your Honor. How do you determine that that's not true from this record? How did you challenge that? You say it's not true. He says it is. What's in the record to define? It is in the record where we showed that Parkview Baptist had on its own website all the same kind of information they were accusing Missy Kennedy did. And once we called them on it, they dropped that argument. They never came up with that ever again, trying to say that Missy Kennedy went on TV and this and that, you know. She didn't even know the names of these students. She wouldn't have done that. Look at all the evidence in the case about what kind of teacher Missy Kennedy was. All the evidence in their declarations, affidavits, testimony from the people working there, a board member, you know. So, trying to say now that they never said she was incompetent, that's not true. No, no. The legitimate non-discriminatory is that she was unprofessional and insubordinate. At the same time, the district court said, you know, well, she's competent, but that's not enough for a genuine issue of material fact. You can't square that. They're saying that she's in . . . Actually, you can easily square that in my view, because it's not . . . some people are able to perform very well in one circumstance, but they don't get along with other people sometimes. And Missy Kennedy . . . It doesn't mean they're not competent. It means they can't get along with somebody. That's why a partnership breaks up between two competent lawyers. This is worse, because this is the woman . . . she's telling her boss all this stuff. As she had a responsibility to do as a teacher. And even if you accepted what Parkview's saying, she's saying, no, that's not. I was not only professional and competent. All of this stuff that they're saying they're drumming up, that didn't happen. And most of this didn't come up until you took my deposition. So what do we have here? At the very least, the need for credibility calls and the weighing of evidence. There should have been a trial on this to determine where the truth is. Thank you very much. Thank you, Your Honors.